JOHN R. LIONBERGER, ASSIGNEE BROADWAY SAVINGS BANK, Respondent, *v.* JOHN PHILIP KRIEGER, SR., ET AL., Appellants.

### February 27, 1883.

1. DE FACTO OFFICER OF BANK—SURETIES. — The sureties of one who was ineligible, under the statute, for the position of bank cashier, but who was irregularly elected, and was *de facto* cashier, and defrauded the bank in that capacity, are liable on their bond.

2. —— The statute concerning elections of bank cashiers imposes a duty, a failure to perform which does not, however, render the election a nullity

3. —— SURETIES. — The sureties of a cashier who holds until his successor is elected and qualified, are liable as long as he continues in office.

4. —— A cashier's official bond is not affected by an enlargement of the bank's capital stock if there is no increase of the cashier's duties.

5. —— The passage, after a surety's death, of a law requiring good bond to be given, does not release the remaining sureties, where no new bond is given.

APPEAL from the St. Louis Circuit Court, LINDLEY, J. *Affirmed.*

E. T. FARISH, for the appellants : The plaintiff in this case has the same rights, and no other, as has the Broadway Savings Bank.— *Harris* v. *Babbitt*, 4 Dill. 185. The doctrine in respect to *de facto* cashiers or officers can only be invoked when the public are concerned ; it has only reference to public officers. — *Currie* v. *Mutual Association*, 4 Hen. & Munf. 346. As the office is annual and the appointment has to be made annually, if Krieger was not a director he was not eligible, and consequently could not be and was not lawfully reappointed ; and as, notwithstanding he was allowed to hold and fill the office by reason of and in virtue of resolutions of the board of directors, any defalcation occurring whilst said Krieger discharged the duties of cashier by virtue of such continuance in office, was not covered by the bond, and no recovery can be had therefor. — Thompson on Offices, 515 ; 1 Allen, 339 ; 1 Pet. 46 ; *Mayor, etc.,* v. *Crowell*, 40 N. J. L. 212. The increase of the stock released the sureties on the bond. — Thompson on Offices, 531 ; Brandt on Surety. 461 ; *Grocery Bank* v. *Kringman*, 16 Gray, 475 ; *Blair* v. *Perpetual Ins. Co.*, 10 Mo. 566 ; *Home Savings Bank* v. *Traube*, 6 Mo. App. 221 ; *The State to use* v. *Roberts*, 68 Mo. 234 ; *Miller* v. *Stewart*, 9 Wheat. 702.

JOHN D. DAVIS and GEORGE A. MADILL, for the respondent : The section of the statute governing savings banks which directs the cashier to be selected from among the directors does not vitiate this bond, though the cashier was

not a director. It is a ground of complaint which the state alone can make. — *The State* v. *Cooper*, 53 Miss. 615. This provision contains (as to selection of cashier) no prohibitory or negative words, and announces ·no penalty or other consequences if it is not complied with; it is therefore simply directory, and not mandatory. — *Bank of Brighton* v. *Smith*, 5 Allen, 413–417; *The State ex rel.* v. *Mead*, 71 Mo. 266–269; *West* v. *Ross*, 53 Mo. 350–354; *Cape Girardeau* v. *Riley*, 52 Mo. 424; *St. Louis* v. *Foster*, 52 Mo. 513; *Jump* v. *McClurg*, 35 Mo. 193–196; *Hicks* v. *Chouteau*, 12 Mo. 341. The defendants are estopped by the recitals of the bond from claiming exemption from its obligations by reason of the fact that the principal was not eligible to the position of cashier, or that he was not duly elected. — *Barada* v. *Carondelet*, 8 Mo. 644–649; *Western Boatmen's Benevolent Assn.* v. *Kribben*, 48 Mo. 37–43; *Hundley* v. *Filbert*, 73 Mo. 34. A bond given to secure the faithful performance of duties of an officer during his continuance in office, whether under present appointment, or any reappointment, is obligatory after expiration of first appointment. — DeColyar on Guaranties, 262; *Angero* v. *Keen*, 1 Mee. & W. 390. The sureties on the bond of an officer, who by law holds until his successor is elected and qualified, remain liable so long as he continues to hold the office, though that be beyond the term for which he was elected.— *Long* v. *Seay*, 72 Mo. 648; *Savings Bank of Hannibal* v. *Hunt*, 72 Mo. 597. The fact that J. Philip Krieger, Jr., while acting as cashier, was elected secretary of the board of directors, and performed the duties of that office, does not release the sureties on his bond as cashier. — *Home Savings Bank* v. *Traube*, 75 Mo. 199; *Hibernia Bank* v. *McGinnis*, 9 Mo. App. 578. The fact that the capital stock of the Broadway Savings Bank was increased after the execution of the bond sued on, and that part of such increased capital was paid in, does not release the sureties. — *Morse* on Banks and Banking (2d ed.), 241; *Bank of Wilmington*

v. *Wollaston*, 3 Harr. 90, 96; Thompson on Liability of Officers, 532; *Morris Canal, etc., Co.* v. *Van Vorst*, 21 N. J. L. 100; *Railway Co.* v. *Goodwin*, 3 Wels., Hurl. & Geo. 320.

BAKEWELL, J., delivered the opinion of the court.

This is an action against the sureties of the bond of John Philip Krieger, Jr., as cashier of the Broadway Saving Bank, of which plaintiff is assignee. The action was dismissed as to Krieger, Jr., the principal on the bond. Nicholson, one of the original defendants, died, and his administrator is made a party. There was a verdict and judgment for plaintiff.

The bond is dated February 13, 1869. It recites that J. Philip Krieger, Jr., has been appointed cashier of the bank by the directors thereof, and that he may be from time to time, by the board of directors, continued and reappointed cashier of said bank. It is conditioned that he shall faithfully perform his duties as cashier, etc., during the time he shall hold the office, whether under the present or under future appointments. The penalty of the bond is $20,000. The first count of the petition charges a defalcation in May, 1878, of $48,400. There are nine other counts. The total defalcation charged is over $400,000.

The defences set up by the answers are: 1. That Krieger, Jr., at the time of the execution of the bond, was not a director of the bank as required by law; that he was, therefore, ineligible; that he was never appointed cashier by the directors, but selected at a stockholders' meeting, and that his assumption of the office was illegal, and the bond therefore void. 2. That subsequent annual re-appointments of Krieger by resolution of the board of directors, were invalid, because he was not a director, and could not, by law, by the by-laws of the bank, be appointed cashier for that reason. 3. That, in April, 1869, the capital stock of the bank was raised from $250,000 to

$300,000, of which ten per cent in cash was called in in 1879.   4. That James Fortune, one of the sureties on the bond, died in 1874, and a new bond was then required of Krieger, but that the directors accepted the old bond in lieu thereof.   A technical defence as to the want of sufficient seals to the bond, made below, is not urged here, and we need not further notice it.   There is nothing in it.

The statutory provision which appellants claim to have been violated in the election of Krieger as cashier, is as follows : " The affairs and business of any such corporation shall be managed and controlled by a board of directors, not less than five nor more than thirteen in number, from whom there shall be designated by themselves a president, a cashier, and a secretary, who shall hold their office for one year, and until their successors are duly elected and qualified."   The by-law adopted at the organization of the corporation as to election of officers, is as follows : " The day after the annual election of directors, the board shall proceed to the election of a president, vice-president, cashier, teller, book-keepers, and other officers of the bank, who shall serve for one year, and until their successors are duly elected and qualified.   All elections shall be by ballot, and no officer shall be elected or removed, except by a vote of the majority of the whole number of the board of directors."

It appears that on the 26th of January, 1869, there was a second meeting of the incorporators of the bank, at which eight persons named were elected directors, and at which a vote was taken of the stockholders, and J. Philip Krieger, Jr., was then and there elected cashier.

On March 2, 1869, the bond sued on was approved. Thereupon Krieger entered upon his duties as cashier, and remained in office, under successive annual appointments, until the bank suspended in 1879, when it was discovered that the bank had lost nearly a half million dollars by the fraudulent acts of its cashier.   In January of every year

meetings were held of the directors, at which elections for officers, including the cashier, were in order, and at which it was, on motion, resolved to declare the present incumbents elected to serve the present year. In January, 1878, Krieger, Jr., was elected a director, and, " on motion, the present incumbents were retained in office." There was the same proceedings in 1877 and 1878. In January, 1879, the entry is, that " nominations for secretary and cashier being in order, it was moved that the president cast the ballot for J. Philip Krieger, Jr., who was thereupon declared duly elected."

On March 7, 1876, by-laws were adopted, to the effect that the board of directors shall appoint a cashier and such other officers as they may think necessary; the board to proceed to the election of officers the day after the annual election for directors; the election to be by ballot; no officer to be elected except by a majority of the whole number of the board; the officers to serve for one year, and until their successors are duly elected and qualified.

It was admitted that Krieger, Jr., was never elected a director, except as stated above.

1. There can be no doubt that, where a public office exists, though the appointment of the officer is irregular, and even contrary to law and to public policy, the bond of the officer, even though void as a statutory obligation, is valid as a contract to perform the duties of the office, at least so far as accounting for public moneys received by him goes, and is binding on the officer and his sureties. This was expressly held, after careful examination of the question, by the circuit court of the United States for the district of Virginia and North Carolina, sixty years ago, Chief Justice Marshall delivering the opinion of the court ( *United States* v. *Maurice*, 1 Brock. 96), and we know of no contrary ruling.

And, as to public offices it has been repeatedly held, and has been always held, whenever the question has arisen,

that, though an officer may have been ineligible, or illegally elected, or not commissioned, or have taken no oath and not qualified as the law requires, or have been, at the time of his appointment, holding another office incompatible with that to which he was appointed, still if he was a *de facto* officer, his official acts were binding on his sureties, and, by signing his bond, they who had thus held him out as a valid officer, and induced others to trust him as such, were estopped to say, in an action upon his bond, as a defence, that he was not the officer he held himself out to be. The cases which so hold are very numerous; some of the leading cases are reviewed in *The State of Nevada* v. *Rhoades* (6 Nev. 352).

And, as to a private officer, as an administrator, it is held, on the same principle, that, where a court has no power to appoint a guardian, but does appoint him, and he gives bonds with sureties, and takes possession of the estate, it is not competent for any of the obligors in the guardian's bond to object that the guardian was no guardian because the court had no right to make the appointment. *Iredell to use* v. *Barbee*, 9 Ired. 250.

It is said that a person is estopped from denying his own acts, but not the acts of another. That is a legal principle, and its application is very well illustrated in *Hinchy* v. *Foster* (3 McCord, 428). There the sheriff having no *capias*, arrested a man, and was about to thrust him into jail. He could only escape imprisonment by giving a bond. The sheriff himself drew the bond, and the defendant signed it as surety. The bond alleged that the sheriff made the arrest by virtue of a *ca. sa.* When the sheriff sued on the bond, it was claimed that the surety was estopped to deny this false recital. But the court held that the defendant was not estopped. He could not find under what authority the defendant acted, except by the representation of the sheriff, and it would be iniquitous to hold that the defendant was bound by the false recital imposed

upon him by the plaintiff in the course of his official oppression.

But the case before us is one of the cashier of a bank, as to whom it is said that he was ineligible because the statute provides that the cashier must be a director, and he was not a director, and the by-laws say that he must be elected by the directors, and he was elected by the stockholders.    He acted as cashier, was *de facto* cashier, and defrauded the bank as cashier, and the sureties on his bond set up as a defence that he was not cashier *de jure* because of the invalidity of his election, though they, the directors, and all persons dealing with the bank, recognized him as cashier during the eleven years that he held the office.    We think that defendants are estopped now to set up any invalidity in his election.    The bond was entered into voluntarily ; there is no question of extending the liability of the sureties to something not contemplated and expressed in their agreement. By the execution of the bond, Krieger was enabled to assume a position of great trust, and to get into his hand the moneys of the bank and of the public dealing with it ; and, even if there is a declared policy of the law that one not a director of a bank shall not be its cashier, public policy, instead of prohibiting, requires us to adopt the principle which has been so often judicially asserted, that the sureties of an officer appointed contrary to the provisions and policy of the law, and whose appointment may for this reason be absolutely void, are, nevertheless, liable, as the principal himself is liable, upon his official bond.    *The Commonwealth* v. *Teal*, 14 B. Mon. 29.

2.  But it is contended that the assignee of the bank stands in the shoes of the bank, and that the bank could not recover on this bond, because, to maintain its action, it must rely on an illegal transaction in which it participated, to wit : the election of a cashier who was not a director.    The stockholders of the bank, it is true, were guilty of an omission in not electing Krieger a director before he was elected cashier.

The stockholders should have elected Krieger director, and the directors (not the stockholders) should have then elected him cashier. But the statute contains no imperative prohibition. The case does not fall within the rule of a violation of prohibitory statutes framed to preserve the peace or promote good morals. The enactment is one of those designed for the government of those to whom the direction of affairs is committed, to secure safe regulations, in the interest of the public dealing with the bank. Such laws are construed as prescribing a rule of duty to directors of banks, not as imposing a prohibition. The legislature did not mean that the official acts of the cashier were to be absolutely void, merely because he was not also a director. *Bank* v. *Smith*, 5 Allen, 413. We do not consider the election of Krieger a nullity, merely because he was not a director. The by-law was also violated as to the mode of his election ; but, as all the electors acquiesced in the election by the stockholders, they may be held to have elected Krieger ; and though they did not vote by ballot, they installed him, and accepted him as cashier, without any opposition, so far as appears, which was much the same thing. The same may be said of every successive election. More than a year before he resigned, the objection that Krieger was not a director was removed. The bond expressly provided that Krieger might be reappointed by the directors, and was to cover any time during which he held the office by such future reappointments. The bond was, by its terms, therefore, obilgatory after the expiration of the first appointment. The parties plainly meant to provide for the continuance in office of the principal in the bond. *Augers* v. *Keen*, 1 Mee., & W. 390. The statute provides that the cashier shall hold his office for one year, and until his successor is duly elected and qualified. In such a case, it is held, in this state, that the sureties on the bond of an officer who holds by law until his successor is elected and qualified, remain liable so long as he continues in office, though he holds over

for years beyond the term for which he was elected. *Long v. Seay*, 72 Mo. 648.

3. The act in force when Krieger was elected (Wag. Stats. 329, sect. 3) does not expressly provide that cashiers of savings banks shall give bond, though it speaks of their being "elected and qualified." But in 1877 (Rev. Stats., sect. 919) the law expressly provided that such officers should give good bond, to be approved by the directors, in such sum, and with such number of sureties, as they shall direct. It appears that James Fortune, one of the original sureties on Krieger's bond, died in 1874. Appellant's counsel contend that, so soon as the law of 1877 went into force, the old bond of Krieger became *functus officio*, and that the directors, by retaining Krieger in office with 'the old bond, in effect made with him a new contract to which the sureties were not a party, and that, therefore, the sureties were then released. But counsel give no reason in support of this view, and nothing occurs to us in support of it. We think there is nothing in this contention.

4. The bank was organized with a capital stock of $250,000, of which ten per cent was paid up. The act under which the bank was organized (Rev. Stats. 1865, p. 368, sect. 4), provides that its capital stock shall not be less than $200,000, or more than $2,000,000, and provides for increasing the stock of such banks by vote of the stockholders. The bank increased its stock under this statute, a few weeks after the bond was given, to $300,000, and then called in twenty per cent. Sixty thousand dollars was the total amount of paid-up stock. Without any increase of the capital stock, the directors might have called in $250,000. We cannot see how the liability of the sureties was increased. The case of *Bank* v. *Kingman* (16 Gray, 474), was a case in which the capital stock was doubled, and the full amount paid in. But in *Bank* v. *Wollaston* (3 Harr. 92), it is held that the bond of an officer of a corporation is not affected by an increase of its capital merely,

where there is no enlargement of the duties of the officer. The real question is, whether the risk to the sureties is materially increased by the increase of stock. Thompson on Liability of Officers, 531. It is clear that the risk was not increased in this case.

It is not necessary to set out the instructions given and refused. The action of the court in this respect was in accordance with the views expressed in this opinion. We see no reason for disturbing the judgment, and, with the concurrence of all the judges, it will be affirmed.